632 P.2d 735

**EVANS PRODUCTS COMPANY, a corporation, Plaintiff-Appellant,**

v.

**Gene O'DELL, Richard D. Evans and Jim O'Dell, Defendants-Appellees.**

**No. 13323.**

Supreme Court of New Mexico.

Aug. 17, 1981.

Glenn G. Stiff, Roswell, for plaintiff-appellant.

Atwood, Malone, Mann & Cooter, P.A., Paul A. Cooter, William P. Lynch, Ralph Shamas, Roswell, for defendants-appellees.

## OPINION

EASLEY, Chief Justice.

Evans Products had obtained a judgment for $30,464.69 on an open account plus $6,000 attorney fees and costs against a limited partnership, Cactus Wholesale Builders Supply (Builders Supply). Evans Products thereafter brought suit to obtain a judgment in the same amount against each of the individual partners of Builders Supply, Richard Evans, Gene O'Dell, and Jim O'Dell, jointly and severally. Following trial, the court (1) awarded judgment to Evans Products against Richard Evans in the full amount of the prior judgment; (2) awarded judgment to Evans Products against Jim O'Dell, one of the alleged limited partners, for $7,500; and (3) dismissed the suit as to the other limited partner, Gene O'Dell. Evans Products appeals.

The issues presented are: (1) whether there is substantial evidence to support the trial court's finding that Cactus Wholesale Trucks and Equipment (Trucks and Equipment) was a partnership separate and distinct from Builders Supply, and therefore not liable for the debts of the latter; and (2) whether there is substantial evidence to support the trial court's finding that Gene O'Dell did not receive $7,500 from the sale of his partnership interest and hence was not liable for the debts of the partnership in that amount.

Builders Supply was a limited partnership originally consisting of Richard Evans, general partner, and Gene O'Dell, limited partner. Sometime after formation of the partnership, Gene O'Dell assigned one-half of his interest (*i. e.*, a one-fourth interest in the partnership) to his son, Jim O'Dell. Evans and Gene O'Dell thereafter went into the business of buying and selling used trucks and equipment under the name Cactus Wholesale Trucks and Equipment. In November, 1975, Evans and Gene O'Dell contracted to sell the assets and liabilities of Builders Supply to Sidney Badger (not a party). Under the original agreement, Evans was to receive $15,000 for his interest in the partnership, and Gene and Jim O'Dell were to receive $7,500 each. This agreement was amended when additional liabilities of the partnership were discovered. As amended, the agreement provided that Evans and Gene O'Dell would personally assume one of the partnership debts of approximately $22,000; that Evans would receive $15,000 for his interest; and further provided:

BADGER hereby agrees to pay to GENE O'DELL the sum of $7,500 for his interest in [Builders Supply], which sum the parties hereto agree has been paid in full by the delivery of various supplies and merchandise to JIM O'DELL, for which JIM O'DELL shall not be required to pay.

The cancellation of a debt owed by Jim O'Dell to Builders Supply was the sole consideration received by Gene O'Dell for the sale of his interest in the partnership. Additionally, Gene O'Dell agreed to personally guarantee a loan obtained by Badger for the purpose of reducing the liabilities of Builders Supply. Builders Supply was insolvent at the time of the sale.

Richard Evans and Gene O'Dell continued to operate Trucks and Equipment after the sale of Builders Supply. Evans subsequently retired and Gene O'Dell took over as managing partner.

In 1976, Evans Products obtained a judgment in the amount of $30,649.69 plus attorney fees and costs against Builders Supply. The indebtedness had been incurred prior to the sale of Builders Supply to Badger. None of the individual partners were named as defendants in that suit.

Evans Products instituted the present action to enforce the prior judgment against the individual partners of Builders Supply. The trial court imposed liability for the full amount of the prior judgment on Richard Evans and liability to the extent of $7,500 upon Jim O'Dell. The court held that Gene O'Dell was not liable in any amount for the partnership debt.

Evans Products sought to impose liability on Gene O'Dell for the full amount of the earlier judgment on the theory that Trucks and Equipment was not a separate partnership, but was in fact merely a division of Builders Supply. Evans Products contends that when Richard Evans retired and Gene O'Dell continued the business with his consent, Gene O'Dell lost his limited partner status and became liable for the debts of the partnership.

We find that there is substantial evidence to support the trial court's finding that Trucks and Equipment was a partnership separate and distinct from Builders Supply. The evidence shows that Richard Evans and Gene O'Dell intended to form a separate partnership; that Jim O'Dell was not a partner in Trucks and Equipment; that Trucks and Equipment was maintained at a separate location; that the Certificate of Limited Partnership of Builders Supply would not allow that partnership to engage in the trucks and equipment business; that Trucks and Equipment maintained separate bank financing and bank accounts and its assets were not commingled with Builders Supply.

Evans Products points to evidence which conflicts with the above and tends to show that Trucks and Equipment was merely a division of Builders Supply. It is well established that on appeal all disputed facts are resolved in favor of the successful party, all reasonable inferences indulged in support of the verdict, all evidence and inferences to the contrary disregarded, and although contrary evidence is presented which may have supported a different verdict, the appellate court will not weigh the evidence or foreclose a finding of substantial evidence. *Toltec Intern., Inc. v. Village of Ruidoso*, 95 N.M. 82, 619 P.2d 186 (1980). We therefore hold that the trial court's finding that Builders Supply and Trucks and Equipment were separate and distinct partnerships was supported by substantial evidence.

As an alternative basis for liability, Evans Products contends that Gene O'Dell should be held personally liable in the amount of $7,500 as consideration received from the sale of the partnership to Badger.

Under the provisions of the Uniform Partnership Act (UPA) pertaining to limited partnerships, Sections 54–2–1 through 54–2–30, N.M.S.A.1978, a limited partner is not personally liable for the debts of the partnership except under certain circumstances. A limited partner is liable as a general partner if he takes part in the control of the business. § 54–2–7. Although a limited partner may transact business with the partnership, he has committed a fraud on the creditors of the partnership if he received any payment, conveyance, or release from liability when the partnership was insolvent. § 54–2–13. He may not receive any share of profits or compensation by way of income when the partnership is insolvent. § 54–2–15. Finally, a limited partner may not receive a return of any part of his contribution when the partnership is insolvent. § 54–2–16.

Applying these provisions to the facts of this case, the trial court properly placed liability to Evans Products for the cancellation of Jim O'Dell's $7,500 debt to the partnership upon Jim O'Dell rather than Gene

O'Dell. Since the partnership was insolvent at the time of the sale to Badger, the liability of Jim O'Dell could properly be predicated upon Section 54–2–13 (release of liability to partnership). The record is clear that the cancelled debt was owed by Jim O'Dell and not Gene O'Dell.

▮ It is equally clear from the record that there was no basis under the UPA for holding Gene O'Dell personally liable. There was no assertion that he took part in the control of the business of Builders Supply. The undisputed evidence established that he received neither cancellation of a personal debt, payment of profits, nor return of contribution from the sale to Badger. The record shows that he agreed to receive nothing for the sale, and even agreed to personally assume some of the partnership's liabilities and to personally guarantee a loan obtained by Badger to pay off other partnership liabilities. The mere recitation in the contract of consideration to Gene O'Dell by way of cancellation of Jim O'Dell's debt was insufficient to overcome this evidence. We hold that there was substantial evidence to support the trial court's finding that Gene O'Dell did not receive $7,500, or any amount, for the sale of his partnership interest and was therefore not liable for the debts of the partnership.

The judgment of the trial court is affirmed.

IT IS SO ORDERED.

SOSA, Senior Justice, and FEDERICI, J., concur.