758 P.2d 312

**Billy M. FULTON, as Independent Executor of the Estate of Georgia Lee Bryant; Billy M. Fulton; Darlene Fulton; Brenda S. Yeary; and Bradley D. Fulton, Individually, Plaintiffs–Appellants,**

v.

**William CORNELIUS and Linda Cornelius, his wife; and other Unknown Claimants of Interest in the Premises Adverse to the Plaintiffs, Defendants–Appellees.**

No. 9663.

Court of Appeals of New Mexico.

June 28, 1988.

Michael F. McCormick, Mel B. O'Reilly, Mel B. O'Reilly, P.C., Ruidoso, for plaintiffs-appellants.

Don E. Dutton, Underwood, Dutton & Griffin, Ltd., Ruidoso, for defendants-appellees.

Hal Stratton, Atty. Gen., Javier Lopez, Sp. Asst. Atty. Gen., New Mexico Taxation & Revenue Dept., Santa Fe, amicus curiae.

OPINION

DONNELLY, Chief Judge.

Plaintiffs, the personal representative and heirs of Georgia Lee Bryant (decedent), appeal from the trial court's order quieting title to realty acquired by defendants at a tax sale. The dispositive issue on appeal is whether the procedures taken by tax officials were adequate to notify the personal representative of decedent's estate of a pending tax sale, prior to conducting a sale of decedent's real property. We reverse and remand.

FACTS

Decedent was the owner of residential property in Ruidoso, Lincoln County, New Mexico. Prior to her death she had received tax correspondence concerning that property, addressed to her at her Lubbock, Texas, residence. After her death on May 7, 1979, decedent's grandson, Billy M. Fulton (Fulton), was appointed as executor of her estate in Texas. Prior to the tax sale in 1984, Fulton filed in Lincoln County, New Mexico, proof of his appointment as decedent's personal representative in Texas, pursuant to NMSA 1978, Section 45-4-204.

When the 1980 and subsequent property taxes were not paid on decedent's property in Lincoln County, both the county treasurer and the Property Tax Division of the State Taxation and Revenue Department (Division) mailed a notice of tax sale addressed to the decedent, at the address contained on the tax rolls for the decedent, in Lubbock, Texas. The post office returned both notices as undeliverable. The county treasurer testified she was unaware decedent had died. She also testified that she had attempted to find a current phone listing for decedent, that she checked to see whether there were any outstanding mortgages or liens against the property, and that she had written to one of decedent's neighbors requesting information regarding decedent. In September 1984, the Division sold the property for $25,000 to defendants for delinquent taxes in order to satisfy a tax lien in the amount of $616.54.

Fulton first learned of the tax sale in 1984, when he visited the property and discovered that the locks on the doors had been changed. Thereafter, on January 28, 1985, plaintiffs filed suit to set aside the tax deed and to quiet title, alleging, among other things, that tax officials had failed to comply with the proper notice requirements prior to conducting the tax sale of decedent's property. Defendants denied plaintiffs' allegations and filed a counterclaim to quiet title to the property.

Fulton testified that on December 13, 1979, he mailed a letter to the Lincoln county assessor's office advising the assessor that Bryant was deceased, that he had been appointed executor of decedent's estate, and that future mail concerning property taxes should be directed to him at his address in Floydada, Texas. Included with the letter was a check in the amount of $97.67, for the 1979 ad valorum tax payment. A copy of the letter and cancelled check were introduced into evidence by plaintiffs.

It is undisputed that county officials negotiated the check from Fulton and mailed a tax receipt to Fulton at his Floydada address. A photocopy of the negotiated check was introduced into evidence, together with the original envelope mailed by the Lincoln county treasurer to Fulton at his home in Floydada, Texas.

County officials did not enter a change of address on the tax roll and did not send other tax notices or notices of tax sale to Fulton. Both the Lincoln county assessor and the treasurer testified that they could find no record of ever having received Fulton's letter requesting a change of address for tax notices.

Following the close of plaintiffs' case-in-chief, defendants moved for a directed verdict. The court, sitting without a jury, granted a dismissal of plaintiffs' suit, finding in part:

6. The Division mailed the statutory notice to the former owner at the last address shown on the property tax schedule and received the return receipt. There was no credible evidence of a request of change of address.

7. Statutory notice of pendency of suit was made upon all unknown persons claiming an interest in and to the subject property.

The district court concluded:

1. There is no cause of action based upon fraud or constructive fraud to challenge a Tax Deed issued by the * * * Division * * *.

2. The Plaintiffs have failed to establish a prima facie case under Section 7–38–70(D) NMSA, 1978 Comp.

3. The Defendants are entitled to judgment, as a matter of law, quieting title in their names to [decedent's property in] Lincoln County, New Mexico.

## VALIDITY OF TAX SALE

Plaintiffs contend that the trial court erred in dismissing their action to set aside the tax deed or to quiet title and that the tax sale was void because tax officials and the Division failed to comply with the notice requirements governing tax sales. Plaintiffs also contend that the Division had been placed on notice of the fact of decedent's death, because prior to the tax sale a New Mexico estate tax certificate had been issued by the Division on October 15, 1980, indicating that New Mexico estate taxes had been paid on decedent's New Mexico property.

### A. Pertinent Statutes

NMSA 1978, Section 7–38–35(A) (Repl. 1986) sets forth the county assessor's duty to prepare a property tax schedule containing "the property owner's name and address and the name and address of any person other than the owner to whom the [property] tax bill is to be sent." Similarly, NMSA 1978, Section 7–38–36(B) (Repl.1986) requires that the county treasurer prepare and mail property tax bills to either the owner of the property or any person other than the owner to whom the bill is requested to be delivered.

The Property Tax Code, NMSA 1978, Section 7–38–82(A) (Repl.1986) also specifies that "[i]t is the duty of all persons charged with the administration and collec-

tion of the property tax to make diligent search and inquiry to determine the correct name and address of the owner of property subject to valuation for property taxation purposes and the imposition of the property tax."

NMSA 1978, Section 7–38–51 (Repl.1986) mandates that the county treasurer mail a notice of delinquency to the owner of the property at the address shown on the tax schedule and any person other than the owner to whom the tax bill was sent. If the property taxes remain delinquent and a tax sale is held in order to satisfy the tax debt, NMSA 1978, Section 7–38–66(A) (Repl.1986) requires that the Division notify the property owner of the impending sale at least twenty days before the date of the sale, by certified mail, return receipt requested, at the address shown on the most recent tax schedule. The statutory language makes the tax sale final, subject only to the challenges found in NMSA 1978, Section 7–38–70(D) (Repl.1986) which strictly limit the grounds upon which a tax deed may be challenged. *See also* § 7–38–82(C).

## B. Due Process Requirements

■ The validity of a tax sale under New Mexico law is dependent upon compliance by tax officials with both statutory and constitutional due process requirements. *See Chavez v. Sharvelle*, 106 N.M. 793, 750 P.2d 1119 (Ct.App.1988). *See also Buescher v. Jaquez*, 101 N.M. 2, 677 P.2d 615 (1983), *limited by Tabet v. Campbell*, 101 N.M. 334, 681 P.2d 1111 (1984); *State ex rel. Klineline v. Blackhurst*, 106 N.M. 732, 749 P.2d 1111 (1988); *Cano v. Lovato*, 105 N.M. 522, 734 P.2d 762 (Ct.App.1986). New Mexico courts have also held that because of statutory provisions deleting the right of redemption following a tax sale[1] and because Section 7–38–66 authorizing the sale of real property for delinquent taxes is in the nature of a forfeiture statute, statutory requirements relating to tax sales will be closely scrutinized and

strictly construed. *State ex rel. Klineline v. Blackhurst; Chavez v. Sharvelle.*

The United States Supreme Court in *Mennonite Bd. of Missions v. Adams*, 462 U.S. 791, 103 S.Ct. 2706, 77 L.Ed.2d 180 (1983), addressed the constitutional requisites for notice required to be given by tax officials prior to the initiation of governmental action which affects a deprivation of property. The Court, relying upon *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed. 865 (1950), held that due process requirements necessitate that notice of a proposed tax sale must be given in a manner reasonably calculated to ensure actual notice to an owner or other person having an interest in the affected property. The Court held that adequate notice is a minimum constitutional precondition to a tax proceeding which will adversely affect the property interests of a party, that a mortgagee is entitled to notice "reasonably calculated to apprise him of a pending tax sale," and that the failure of tax officials to provide such notice constitutes a denial of due process. *Id.* 399 U.S. at 314, 70 S.Ct. at 657.

*Mennonite* also held that neither notice by publication and posting, nor notice mailed to the property owner, constitutes an adequate means of giving notice to a mortgagee where the name and address of the mortgagee can otherwise be reasonably ascertained. This court recently followed the approach indicated in *Mennonite* to require that reasonable notice of a pending tax sale must be given to a mortgagee, even though the tax lien had arisen before the note and mortgage were executed. *See Macaron v. Associates Capital Servs. Corp.*, 105 N.M. 380, 733 P.2d 11 (Ct.App. 1987).

Similarly, in *Brown v. Greig*, 106 N.M. 202, 205, 740 P.2d 1186, 1189 (Ct.App.1987), this court held that since "[i]n keeping with the intent of the legislature [tax authorities are required] to notify 'each property owner' of an impending sale of his

---

**1.** In 1973, the New Mexico Legislature eliminated the statutory redemption period for property owners to repurchase property sold at a tax sale. *See* 1973 N.M.Laws, ch. 258, Section 156, repealing former act, codified in part at NMSA 1953, Repl.Vol. 10 (1961) §§ 72–8–1 to –51; 72–8–52.1 & –52.2.

property, it is implicit that the legislature also intended that holders of record title be notified of the same thing." The court in *Brown,* citing *Mennonite* and *Mullane,* concluded that due process requires that "the state must provide notice of sale to parties whose interest in property would be affected by the sale, as long as that information is reasonably ascertainable." *Id.,* 106 N.M. at 206, 740 P.2d at 1190. *Compare Production Credit Ass'n v. Williamson,* 27 SBB 381 (1988) (party with interest in property that has been served and participates in proceedings is on constructive notice of sale).

■ Following the rationale in *Mennonite* and *Brown,* we hold that both under the fourteenth amendment to the United States Constitution and under Article II, Section 18 of the New Mexico Constitution, due process notice requirements similarly require that when the Division has reason to know that the owner of real property subject to delinquent tax sale is deceased, then reasonable notice of the proposed tax sale must be given to decedent's personal representative where one has been appointed and where record of that fact is reasonably ascertainable by the Division. *Cf. Tulsa Professional Collection Servs., Inc. v. Pope,* —— U.S. ——, 108 S.Ct. 1340, 99 L.Ed.2d 565 (1988).

In the instant case, after county tax officials and the Division were placed on notice that the notices to taxpayer were returned as undeliverable, tax officials did not check the estate tax records on file in the Division's office or the probate records on file in Lincoln County. The estate tax records which were on file in the office of the Taxation and Revenue Department prior to the date of the tax sale would have indicated that decedent had died in 1979, that

Fulton had been appointed as personal representative of decedent's estate and did set forth sufficient information whereby the name and address of the representative of decedent's estate was readily ascertainable.[2] Fulton also testified that prior to the tax sale he had filed a notice of decedent's death and his appointment as personal representative of decedent's estate in Lincoln County records.

Under the facts before us, we determine that upon return of the mailed notices of the tax sale indicating that the taxpayer could not be located, the failure of the Division to notify Fulton invalidated the tax sale. *Cf. Klinger v. Kepano,* 64 Haw. 4, 635 P.2d 938 (1981) (tax sale was void when owner of land was listed in records as an estate of a deceased person; due process required some reasonable further inquiry to ascertain identity and address of interested person to whom notice can be given). In this case, when the notices were returned undelivered and the Division's own estate tax records contained evidence of the taxpayer's death, the Division was on notice that the taxpayer was deceased.

Under these circumstances, the Division was required to notify Fulton of the proposed tax sale if his identity and address were reasonably ascertainable. We believe they were: by statute, the personal representative must file the estate tax return and a copy of the federal estate tax return. § 7–7–5. Further, the district court records in Lincoln County contained notice of Fulton's appointment in Texas. The Division's failure to notify Fulton invalidates the sale on due process grounds. *See Harrigan v. County of Peoria,* 106 Ill.App. 218 (1903) (the personal representative of decedent is entitled to notice of tax sale where administrator can be ascertained unless af-

---

**2.** The Estate Tax Act, NMSA 1978, Sections 7–7–1 to –12 (Repl.1986), in Section 7–7–4 imposes a state tax on the transfer of the net estate located in New Mexico of every nonresident. Under Section 7–7–8, the Division is required to file a certificate with the clerk of the county in which the estate or any part of it is located, indicating either that no New Mexico estate taxes are due or that "the taxes due under the

Estate Tax Act have been paid." The statute also precludes final settlement of an estate until such certificate has been filed. Under Section 7–7–5, it is the personal representative who must file the return and a copy of the federal estate tax return must be included. The record indicates there was a federal estate tax return in this case.

ter proper inquiry he cannot be located in the county); *Burks v. Hedinger,* 167 N.W. 2d 650 (Iowa 1969) (where record property owner is dead, statutory requirements for providing notice must be strictly complied with, and where an inspection of the property would indicate the current owner, tax officials must make reasonable efforts to notify current owner of the proposed tax sale); *see also Moore v. Weiss,* 85 Montg. 384, 38 Pa.D. & C.2d 235 (1965) (tax sale is invalid where record owner is deceased, notice of proposed tax sale was not sent to decedent's heir at her last known address, and where tax officials could, upon reasonable inquiry, have learned of plaintiff's correct address); *Shockley v. Good,* 13 Ill.2d 298, 148 N.E.2d 763 (1958) (tax deed ordered to be set aside where diligent inquiry would have revealed death of taxpayer and names of heirs or devisees); Annotation, *Who Are Entitled to Notice, or Are Necessary Parties, In Order to Perfect Tax Title,* 169 A.L.R. 686 (1947); *Due Process Notice Required for Real Estate Tax Sales,* 49 Mo.L.Rev. 385 (1984); *compare Bender v. City of Rochester, N.Y.,* 765 F.2d 7 (2d Cir.1985) (tax officials are not required to conduct a search to determine whether a taxpayer is deceased prior to tax sale, where the name and address of the personal representative or distributees are not reasonably ascertainable).

██ The requirement that the Division search its own records for evidence to determine whether a taxpayer is deceased prior to conducting a tax sale of realty does not impose an unreasonable burden upon state or local tax officials. As observed in *Mennonite,* due process requires that tax officials have a duty to undertake "reasonably diligent efforts" to discover the names and addresses of those whose interest in the property can reasonably be ascertained prior to conducting a tax sale. *See also Mullane v. Central Hanover Bank & Trust Co.* What constitutes reasonable diligence depends on the facts and circumstances of each particular case. Reasonable diligence is such action as an individu-

al of ordinary prudence would undertake under the circumstances in order to be successful. *See Sizemore v. Smith,* 6 Ohio St.3d 330, 453 N.E.2d 632 (1983).

In *Cano,* this court held that the Division, for due process purposes, had not been placed on notice that the taxpayer was deceased; hence tax officials were not required to undertake an "extraordinary effort" to ascertain if a taxpayer was deceased. *Cano,* however, is not controlling in the instant case. Contrary to the facts in *Cano,* in the instant case, there is evidence in addition to Fulton's testimony that he purportedly notified the county treasurer of the fact of decedent's death, which indicates that the Division had reason to know that fact as well as the name and address of decedent's personal representative, prior to the tax sale, due to the issuance of the estate tax certificate by the Division indicating the payment of taxes by decedent's estate. A certified copy of the New Mexico estate tax certificate was introduced into evidence at trial, and the original certificate was shown to be maintained by the Division in its own records.

In addition, in *Cano,* this court observed that there was no evidence of death ascertainable through the probate records. In this case, unlike *Cano,* the probate records in district court contained evidence of the taxpayer's death and the appointment of a personal representative. Thus, no extraordinary effort was required to identify Fulton.

Under the record before us and the analysis articulated in *Mennonite* and *Brown,* neither federal and state minimal due process requirements nor the provisions of Section 7–38–82(A) were complied with by the Division. The Division was put on notice from its own records that taxpayer was deceased and could have determined the name and address of the personal representative from those records as well as from the district court records. On these facts, due process required notice.

The court expresses its appreciation for the assistance given by the New Mexico Taxation and Revenue Department for its amicus brief filed herein.

The order of the district court dismissing plaintiffs' case with prejudice and quieting title to the property in defendants is reversed, and the cause is remanded for further proceedings consistent with this opinion. Plaintiffs are awarded their costs on appeal.

IT IS SO ORDERED.

MINZNER and FRUMAN, JJ., concur.